UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
OSCAR EDUARDO LADINO RODRIGUEZ,

Petitioner,

- against -

RAUL MALDONADO JR., *in his official capacity as Warden, Metropolitan Detention Center, Brooklyn, et al.*,

Respondents.
---------------------------------------------------------x

**<u>MEMORANDUM & ORDER</u>**
26-CV-6615 (PKC)

PAMELA K. CHEN, United States District Judge:

On October 14, 2026, Oscar Eduardo Ladino Rodriguez filed a petition for a writ of habeas corpus to challenge the lawfulness of his detention stemming from his arrest on September 24, 2026 by United States Immigration and Customs Enforcement ("ICE"). For the following reasons, the Petition is GRANTED, and Respondents are ordered to release Petitioner from custody immediately and no later than 5:00 p.m. ET on Monday, October 26, 2026, unless Respondents file a motion with the Court by 11:00 a.m. ET on Monday, October 26, 2026 requesting that the Court hold a bond hearing at which Respondents will bear the burden to demonstrate that Petitioner presents a risk of flight.

## BACKGROUND

Petitioner is a native and citizen of Colombia. (Dkt. 1, ¶ 11.) He entered the United States unlawfully on or about June 14, 2022. (Dkt. 8, at 3.) The United States Department of Homeland Security ("DHS") released him on parole under Section § 212(d)(5)(A) of the Immigration and

Nationality Act ("INA"), (*id.*), on June 14, 2022. (Dkt. 1-1, at ECF[1] 13.) His parole status was valid until August 13, 2022. (Dkt. 8-1, ¶ 6.)

After he was released on parole, Petitioner moved to the Bronx, where he has lived at the same address since at least November 2023. (Dkt. 1, ¶ 44.) He applied for asylum in November 2024; his application remains pending. (Dkt. 8-1, ¶ 9.) In May 2025, he obtained authorization from the United States Citizenship and Immigration Services ("USCIS") to work in the United States until May 19, 2030. (Dkt. 1-1, at ECF 29.) Petitioner has filed federal and New York State income tax returns for tax years 2022 through 2025. (Dkts. 1, ¶ 47; 1-1 at ECF 34–82.) His partner gave birth to their son at Jacobi Medical Center in the Bronx in September 2026. (Dkt. 1, ¶ 48.) He has no criminal history in any country. (*Id.* ¶ 49.)

On September 24, 2026, the day after his newborn son came home from the hospital, (*id.*, ¶ 48), ICE officers ran database checks of vehicles in the Bronx, including Petitioner's, while attempting to locate and arrest another individual. (Dkt. 8, at 4.) The officers' record search led them to arrest Petitioner. (*Id.*)[2]

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[2] The record is inconsistent as to the circumstances under which Petitioner was arrested. Respondents state that "[a] supervisory officer at the scene issued a Form I-200[] Warrant of Arrest," and the ICE officers then "approached Petitioner and engaged in a consensual conversation" before arresting him. (Dkt. 8, at 4.) The Declaration of Deportation Officer Ralph Rosario is consistent with that description. (Dkt. 8-1, ¶ 10.) But the Form I-213 Record of Deportable/Inadmissible Alien, which contains notes of the "encounter," states that "officers conducted a warrantless arrest due to exigent circumstances, including the immediate risk of flight and officer safety concerns" because of Petitioner's proximity to his home and vehicle, his "flinch[ing]" when officers approached him, his previous lack of compliance with an ICE Alternatives to Detention program, and the presence of "agitators in the area." (Dkt. 8-6, at 3–4.) On October 21, 2026, Petitioner sought leave to amend his Petition to add a claim challenging the lawfulness of his arrest. (Dkt. 9, at 1–2.) Because the Court grants the Petition on the basis of Petitioner's due process claim, any additional claim is now moot and unnecessary to resolve.

The officers transported Petitioner to 26 Federal Plaza, New York, New York for processing. (*Id.*) "During processing, ICE officers issued and served on Petitioner an I-862[] Notice to Appear" and a Form I-286 Notice of Custody Determination stating that he would be detained pending a final administrative determination. (*Id.* at 4–5; Dkts. 8-4; 8-5.) Later that day, officers transported Petitioner to Delaney Hall Detention Facility in Newark, New Jersey. (*Id.* at 5.)

On September 29, 2026, an immigration judge ("IJ") in the Immigration Court in Elizabeth, New Jersey conducted a custody re-determination hearing. (Dkt. 1, ¶ 54.) At the hearing, Petitioner bore the burden of proving that he neither posed a danger to the community nor presented a risk of flight. (*Id.* ¶ 55.) The IJ denied bond to Petitioner and ordered him to remain detained after finding that Petitioner presented a risk of flight. (Dkt. 8-7.) The IJ's order provides no basis for that determination, nor any indication that the IJ considered alternatives to detention. (*Id.*) Nothing in the record—including Petitioner's submissions, the IJ's order, and Respondents' declaration—suggests that Respondents presented any evidence or argument to the IJ to support a finding that Petitioner presented a risk of flight.

Petitioner filed a Petition for a writ of habeas corpus in the District of New Jersey, which the district court denied on October 7, 2026. (Dkt. 8-8, at 4.) On October 14, 2026, officers transported Petitioner to the Metropolitan Detention Center in Brooklyn. (Dkt. 8, at 5.)

## DISCUSSION

### I. Due Process

Petitioner claims that the bond hearing he received in front of the IJ violated his Fifth Amendment due process rights in so far as the IJ placed the burden on him, not Respondents, to demonstrate that he does *not* present a risk of flight. (Dkt. 1, ¶¶ 75–81.) The fact that the IJ placed

the burden on Petitioner at the hearing is not disputed, so the only question is whether that burden-shifted framework was improper; the Court finds that it was.

Upon arresting an alien under Section 1226(a), an ICE officer makes an initial custody determination: ICE "may continue to detain the arrested alien," 8 U.S.C. § 1226(a)(1), or it "may release the alien" on bond or conditional parole, 8 U.S.C. § 1226(a)(2), if the alien "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If not released, the alien may request pursuant to Section 1226(a) that an immigration judge review the ICE officer's initial custody determination and hold a hearing on the alien's potential risk of flight and danger to the community. *See* 8 C.F.R. § 236.1(d)(1).

Based on the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), this Court and other courts have found that due process requires the Government to bear the burden of proof at the bond hearing to show that the noncitizen presents a risk of flight or poses a danger.[3] In

[3] The Court notes the split among the courts of appeals that have addressed this issue, all of which have applied the *Mathews* factors but reached different conclusions. While the Second Circuit has not yet weighed in on this issue, the First Circuit has found that due process requires the Government to bear the burden of proof whereas the Fourth and Ninth Circuits have found that due process does not so require. *Compare Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–39 (1st Cir. 2021) (holding that the "balance of the *Mathews* factors weighs in favor" of the "conclu[sion] that the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under [S]ection 1226(a)"); *with Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203, 1207–09 (9th Cir. 2022) (internal citation omitted) ("[T]he Due Process Clause does not [] require" a Section 1226(a) "bond hearing at which the government bears the burden of proof" despite aliens' "legitimate and reasonably strong private liberty interest" because "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law,'" and "existing agency procedures sufficiently protect[] [aliens'] liberty interest and mitigate[] the risk of erroneous deprivation"); *and Miranda v. Garland*, 34 F.4th 338, 358–66 (4th Cir. 2022) (internal citation omitted) (finding class of aliens unlikely to succeed on the merits of claim that due process requires the Government to bear the burden in Section 1226(a) bond hearings, explaining that "aliens are due less process when facing removal hearings than an ordinary citizen would have," and "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature"). As discussed below, the Court

*Mathews*, the Supreme Court set forth three factors for courts to consider in determining "when, under our constitutional system, judicial-type procedures must be imposed upon administrative action," *id*. at 348:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

*Id*. at 335.

The first *Mathews* factor "cuts sharply in [Petitioner's] favor," *Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020), which Respondents do not dispute, (Dkt. 8, at 6). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). "For this reason, 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections.'" *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) (citing *Addington v. Texas*, 441 U.S. 418, 425 (1979)).

As to the second *Mathews* factor, the risk of erroneous deprivation is high when noncitizens, like Petitioner, bear the burden of proving at a Section 1226(a) bond hearing that they do not present a risk of flight or pose a danger. First, "proving a negative . . . can often be more difficult than proving a cause for concern. Requiring that detainees . . . prove that they are *not* a danger and *not* a flight risk—after the government has enjoyed a presumption that detention is

---

joins the First Circuit and the many district courts in the Second Circuit "that have held that 'where, as here, [Respondents] seek[ ] to detain a noncitizen pending removal pursuant to [Section] 1226(a), the Fifth Amendment Due Process Clause requires [Respondents] to bear the burden of proving, by clear and convincing evidence, that such detention is justified." *J.C.G. v. Genalo*, No. 24-CV-8755 (JLR), 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (citation omitted) (collecting cases).

necessary—presents too great a risk of an erroneous deprivation of liberty." *Black v. Decker*, 103 F.4th 133, 156 (2d Cir. 2024). Second, owing to their confinement, "detainees are disadvantaged by a lack of information when the burden is placed upon them to prove that they are not dangerous or a flight risk," *Singh v. Francis*, No. 26-CV-0344 (OEM), 2026 WL 507890, at *5 (E.D.N.Y. Feb. 24, 2026), while, conversely, "the Government ha[s] substantial resources to deploy" in this context. *Velasco Lopez*, 978 F.3d at 852. *See Hernandez-Lara*, 10 F.4th at 30 (describing how "detained individuals will likely experience difficulty in gathering evidence on their own behalf").

Those risks to the truth-finding process were borne out here where it seems unlikely that, had Respondents been forced to bear the burden, they would have been prepared to present much, if any, credible evidence that Petitioner presents a risk of flight. Neither ICE's initial custody determination form, nor the IJ's bond denial order, cite evidence supporting the respective finding that Petitioner presents a risk of flight. Thus, the IJ placing the burden on Petitioner to prove that he does not present a risk of flight likely led to an inaccurate finding on that issue.

Indeed, there is strong evidence in the record that Petitioner does not, in fact, present a risk of flight. He has a newborn U.S. citizen child, (*id*. ¶ 48), has a pending asylum application, (Dkt. 8-1, ¶ 9), has maintained a consistent residence in the Bronx for approximately three years, (Dkt. 1, ¶ 44), secured authorization from USCIS to work in the United States until May 19, 2030, (Dkt 1-1, at ECF 29), and has paid federal and New York State taxes for the past four years. (*Id*. ¶ 47; Dkt. 1-1, at ECF 34–82.)

Moreover, at a constitutionally compliant bond hearing, an immigration judge should consider alternatives to detention that would mitigate any risk of flight. *See D.C. v. Noem*, 825 F.Supp.3d 309, 326 (S.D.N.Y. 2026) (explaining that the "heavy weight of recent case law" instructs that immigration judges must consider alternatives to detention when evaluating whether

the petitioner is eligible for bond).[4] Instead, the IJ placed the burden on Petitioner to show he did not present a risk of flight, and having found that Petitioner had not met this burden, the IJ did not consider any alternatives to detention. (Dkt. 8-7.) But "failing to consider whether alternatives to detention may ameliorate any danger posed by [a petitioner's] release creates a significant risk that he will be erroneously deprived of his liberty interest." *Cantor v. Freden*, 761 F. Supp. 3d 630, 637 (W.D.N.Y. 2025). Accordingly, this factor also weighs in Petitioner's favor.

The final *Mathews* factor is Respondents' interests, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. In this context, those interests are "ensuring that noncitizens do not abscond and ensuring they do not commit crimes" while on bond. *Velasco Lopez*, 978 F.3d at 854 (citation modified). "However, the Government [does not have] an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight. On the contrary, shifting the burden of proof to the Government to justify continued detention promotes the Government's interest . . . in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id.* If a noncitizen does in fact present a risk of flight, then in a properly conducted hearing the Government would have had the opportunity to demonstrate that fact to an immigration judge. Whereas placing the burden on the Government neither precludes nor hampers its ability to detain individuals who actually present a risk of flight or pose a danger. Nor is conducting constitutionally compliant bond hearings likely "to impose an undue administrative or financial burden on the Government, because the Government 'is generally in a better position than a

[4] In fact, in *D.C.*, "[r]espondents acknowledge[d] that *Black* [*v. Decker*] supports an [immigration judge's] consideration of alternatives to detention with respect to flight risk," and instead argued (unsuccessfully) that such consideration was only unnecessary with respect to a finding of dangerousness. *See* 825 F.Supp.3d at 325.

detained noncitizen to gather and present evidence relevant to the bond determination.'" *Mathieu v. Dep't of Homeland Sec.*, No. 26-CV-4630 (PAE), 2026 WL 1747084, at *5 (S.D.N.Y. June 17, 2026) (citation omitted). Thus, this factor too weighs in Petitioner's favor.

In response, Respondents rely on *Velasco Lopez* to suggest that a burden-shifted bond hearing is required only after "prolonged detention under [Section] 1226(a)," which Respondents define as longer than six months. (Dkt. 8, at 6 (citing *Velasco Lopez*, 978 F.3d at 854–55 & n.13.) Respondents, however, overread that decision. In *Velasco Lopez*, the Second Circuit addressed an as-applied procedural due process claim: whether the petitioner's "prolonged incarceration, which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process." 978 F.3d at 855. The Second Circuit explained that the case before it did "not require [it] to establish a bright-line rule for when due process entitles an individual detained under [Section] 1226(a) a new bond hearing with a shifted burden" because "[o]n any calculus, [Petitioner's] fifteen-month incarceration without a determination that his continued incarceration was justified violated due process." *Id*. at 855 n.13. To bolster its conclusion concerning the constitutional limits on prolonged detention of noncitizens, the Second Circuit in *Velasco Lopez* referred to the Supreme Court's holding in *Zadvydas*, that noncitizens who have already been ordered removed, and who have committed serious criminal offenses, "cannot be detained indefinitely, and a presumptively constitutional period of detention does not exceed six months." *See id*. (citing *Zadvydas*, 533 U.S. at 701). However, what the Second Circuit did not do in *Velasco Lopez* is extend *Zadvydas*'s presumption—which concerned noncitizens who have (a) been removed, and (b) committed serious criminal offenses—to the Section 1226(a) bond hearing context. And it did not address a facial challenge to the allocation of the burden on the noncitizen detainee at a Section 1226(a) bond hearing—the issue before this Court.

Thus, the Court joins the numerous district courts in this Circuit that have found that due process requires the Government to bear the burden proof at noncitizens' Section 1226(a) bond hearing to show that they present a risk of flight or pose a danger, and that by shifting that burden onto Petitioner, Petitioner's due process rights were violated. *See J.C.G. v. Genalo*, No. 24-CV-8755 (JLR), 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (collecting cases); *Tsai v. Maldonado*, No. 26-CV-5517 (PKC), 2026 WL 2719996, at *6 (E.D.N.Y. Sept. 15, 2026); *Bohorquez v. Mullin*, No. 26-CV-2053 (AMD), 2026 WL 1693948, at *5 (E.D.N.Y. June 11, 2026); *Lupercio v. Genalo*, No. 26-CV-5321 (OEM), 2026 WL 2666844, at *4 (E.D.N.Y. Sep. 10, 2026); *Mendoza Raymundo v. Almodovar*, No. 26-CV-2304 (HG), 2026 WL 1480372, at *3 (E.D.N.Y. May 27, 2026).[5]

## II. Administrative Exhaustion

Respondents argue that Petitioner's failure to appeal the IJ's bond denial warrants dismissal of his Petition. (Dkt. 8, at 8-10.) Petitioner argues that "[a]ny exhaustion requirement here . . . may be excused." (Dkt. 1, at 10.) The Court agrees with Petitioner.

As Respondents concede, "there is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus," (Dkt. 8, at 8 (citing *Hernandez v. Maldonado*, No. 26-CV-5584 (RPK), 2026 WL 2983493, at *1 (E.D.N.Y. Oct. 5, 2026)), and, even as to the "judicially created [exhaustion] requirement," there are "recognized exceptions," (*id.*, at 9 (citing *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533 (S.D.N.Y. 2014)), including when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile and (4) in certain instances a plaintiff has raised a substantial

[5] The Court acknowledges that courts in this District have reached the opposite conclusion in recent decisions. *See, e.g.*, *Aquino v. Mullin*, No. 26-CV-4910 (EK), 2026 WL 2350285, at *1 (E.D.N.Y. Aug. 13, 2026). The Court respectfully disagrees with those cases.

constitutional question," (*id*., at 9 (citing *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003)). Here, requiring Petitioner to exhaust by appealing the IJ's detention decision would be futile. First, the Board of Immigration Appeals ("BIA") cannot address Petitioner's due process claim that it is the Government that bears the burden of proving that Petitioner presents a risk of flight or danger before detaining him under Section 1226(a) because "[c]onstitutional claims lie outside the BIA's jurisdiction." *J.C.G.*, 2025 WL 88831, at *5 (citing *United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002)) (concluding that exhaustion "would be futile" as to petitioner's due process claim for a burden-shifted bond hearing); *see also O.F.C. v. Decker*, No. 22-CV-2255 (JPC), 2022 WL 4448728, at *4 (S.D.N.Y. Sept. 12, 2022) ("[O]n appeal the BIA could not have reversed the IJ's decision denying bond on the grounds that the IJ's allocation of the burden of proof was unconstitutional[.]"). Second, any appeal to the BIA would inevitably result in an affirmance of the IJ's detention determination, including on the burden of proof issue. *See O.F.C.*, 2022 WL 4448728, at *5 (citing *Washington v. Barr*, 925 F.3d 109, 118 (2d. Cir. 2019) ("Exhaustion is futile if 'the agency has already determined the issue.'"); *id*. ("[The BIA] has had tens of thousands of opportunities to reconsider whether its allocation of the burden of proof in bond hearings violated the requirements of administrative law, and on none of those occasions has it chosen to do so . . . [I]t is hard to imagine a less ambiguous example of an agency's having already made up its mind than the BIA's consistent and lengthy record of allocating the burden of proof to detained immigrants."); *Mathieu*, 2026 WL 1747084, at *3 n.4 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)) ("BIA precedent—which . . . binds IJs—holds that the burden of proof at bond hearings is properly placed on noncitizens."); *P.M. v. Joyce*, No. 22-CV-6321 (VEC), 2023 WL 2401458, at *1 n.2 (S.D.N.Y. Mar. 8, 2023) (collecting

cases) ("The BIA has repeatedly affirmed its position that detainees bear the burden of proof during a bond hearing pursuant to [S]ection 1226(a).").

Accordingly, the Court excuses Petitioner's non-exhaustion of administrative remedies.

## III. Remedy

A writ of habeas corpus "is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008) (citations omitted); *see also Yao v. Almodovar*, 813 F. Supp. 3d 461, 477 (S.D.N.Y. 2025) ("A bond hearing after the fact, by definition, would not and cannot cure [the] constitutional violation. Although [petitioner's] release today cannot cure his loss of liberty . . . , this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so." (collecting cases ordering same remedy)); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) (concluding that "no relief short of petitioner's immediate release would be appropriate or sufficient" in light of the constitutional violations suffered). Here, as discussed above, Petitioner's due process rights have been violated as a result of his detention without a constitutionally adequate bond hearing. Accordingly, the Court finds it appropriate and necessary to order Petitioner's immediate release. *See, e.g.*, *Kumar v. Maldonado*, No. 26-CV-5326 (NRM), 2026 WL 2606756, at *6 (E.D.N.Y. Sep. 3, 2026) (ordering release where petitioner's due process rights were violated as a result of bond hearing where the burden was improperly placed on petitioner).

However, the Court will grant Respondents the opportunity to make a showing as to risk of flight should they believe they can make such a showing. In that event, Respondents can request that the Court hold a bond hearing at which they will bear the burden of proving Petitioner presents a risk of flight, and the Court will consider alternatives to detention. *See J.R.U. v. Genalo*, No. 26-CV-4332 (LJL), 2026 WL 1864975, at *18 (S.D.N.Y. June 29, 2026) (granting petition due to

inadequate bond hearing but allowing the Government the opportunity to present to the court evidence and argument to support petitioner's continued detention since the Government had not explicitly conceded that it could not prove petitioner presented a risk of flight); *cf. Sosa v. Warden of Orange Cnty. Corr.*, No. 26-CV-2304 (DEH), 2026 WL 1803814, at *8 (S.D.N.Y. June 23, 2026) (ordering release where, "having twice conceded that [petitioner] is not a danger to the community or a flight risk, the Government could not possibly carry its burden at a bond hearing to show that continued detention is warranted").

**CONCLUSION**

For the foregoing reasons, Oscar Eduardo Ladino-Rodriguez's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Dkt. 1), is GRANTED. Petitioner's other arguments, including that Respondents violated the Administrative Procedure Act, (Dkt. 1, ¶¶ 88–93), are now moot and unnecessary to resolve.

Respondents are hereby ORDERED to release Oscar Eduardo Ladino-Rodriguez immediately, and no later than 5:00 p.m. ET on Monday, October 26, 2026, unless Respondents file a motion with the Court no later than 11:00 a.m. ET on Monday, October 26, 2026 requesting a bond hearing. If Respondents make such a request, the Court will hold the bond hearing at 12:00 p.m. ET on October 27, 2026 in Courtroom 4F North. Otherwise, Respondents shall release Petitioner subject to the conditions under which he was at liberty before he was detained, without any additional constraints on his liberty, including, but not limited to, electronic or GPS monitoring. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money.

Respondents shall confirm compliance with these directives in a filing on the docket by 12:00 p.m. ET on October 27, 2026.

Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments) without prior notice to and authorization from the Court.

Respondents shall not re-detain Petitioner without first moving before this Court to demonstrate compliance with all applicable regulatory, statutory, and constitutional requirements necessary to arrest and detain Petitioner. Should Respondents seek to re-detain Petitioner, they are directed to file a motion with the Court that justifies lawful detention. The Court retains jurisdiction to review any subsequent arrest or detention of Petitioner by Respondents to ensure compliance with this Memorandum and Order.

Should Petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within 30 days of a final judgment in this action. 28 U.S.C. § 2412(d)(1)(B).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 23, 2026
Brooklyn, New York